The next case for argument is 22-1699 Dali Wireless v. CommScope Technologies. Mr. Leffler, please proceed to the next hearing. Yes, Your Honor. Christopher Leffler on behalf of Dali Wireless, appointive appellant in this matter. There are five related issues at issue in this appeal. There are three terms that were construed on the eve of trial that are under appeal, and the issue is were those construed properly? And the remaining issue is with that construction, do they contradict previously construed terms that are still operative in the case? Well, I want to explain more what you mean by the second part because I'm not sure, but let me ask you as a preliminary matter. In order to prevail in this case, do you agree that you would have to – we would have to agree with you on a reversal of all three claimed constructions done by the district court, Judge? I actually don't necessarily agree with that. It depends on how you disagree with the district court, Judge. So as we said, there are three interrelated terms at issue. There is the translating as appropriate. There is routing and switching the packetized – packetizing the baseband signals and routing and switching the packetized signals. So if we start with translating – Could you elaborate a little bit more on your answer? I mean, I think you said it depends on how we agree. So what does that mean? Does it mean, like, if we hurry on two of these particular ones, then we wouldn't have to reach a third? Could you just give that more detail? Sure. I believe that the key here is the first one, the translating as appropriate, and the third one, routing and switching the packetized signals according to the reconfiguration. On packetizing the baseband signals, if translating as appropriate is properly construed, then I believe that the antecedent basis for that construction is present and there wouldn't be a disagreement. Okay. Okay. Okay. Can I ask one further housekeeping question, which is I know there are two pending district court proceedings that we've been apprised of involving these companies. Yes, Your Honor. Those are currently stayed pending IPR. Are the same claim limitations in dispute there? The construction of those claims are the same? I don't know what the infringement issues are there. Are they the same or different? They are different. Different claim construction? Correct. They don't implicate the claim constructions that are on appeal here? The claim constructions from the district courts there that are stayed, the constructions are different than the constructions here. Do the constructions here impact anything that's at issue in those other cases in Texas? Yes. Okay. Which claim constructions? The packetizing the baseband signals, or the translating as appropriate. I'm sorry. All three, but if it's the same thing, if we get translating as appropriate, then I believe the second one, the antecedent basis would be okay, and therefore, then it would be the third one as well. Can I ask you the flip side of what you're telling us? If we were to agree with the district court on the translating limitation, did the other two claim construction disputes fall out, and is this sufficient to resolve the claim construction disputes in the district court? Yes, Your Honor. The Texas case too? Yes. Is there a claim construction that's translating in the Texas case? No, it's not. It's your stipulation. You have a stipulation somewhere, right? I'm trying to remember what the claim construction in that case was, and I apologize. I believe it's plain and ordinary meaning, which doesn't help us here. But if we decide the translating step here, then that's going to control the other district court case? It will, yes. This will be precedent for that. Because you haven't asked for plain, or at least we're not dealing in plain and ordinary meaning here. Well, Your Honor, we have asked. In our briefing, we did ask for plain and ordinary meaning for this term. But you didn't get it. We didn't get it in the district court, but we're hoping to get it here. So can I ask you about the meaning of the word as appropriate, the phrase as appropriate as in when the full limitation translating the uplink and downlink signals between RF and baseband as appropriate. I think the district court said as appropriate means to the extent, you know, I guess as much of the amount, the amount of translation. My question is why doesn't as appropriate mean the type of translation? And let me explain. The limitation says translating the uplink and downlink signals between RF and baseband as appropriate. So in other words, it's talking about translating from RF to baseband and from baseband to RF, right? Correct. And so as appropriate would it absolutely write the language preceding it in which it can be modifying is between RF and baseband. Correct. Such that as appropriate means, you know, translating from RF to baseband or from baseband to RF as appropriate. In other words, it's telling you what type of translating. That is Dolly's position, Your Honor. That is the position that Dolly has taken in this case. That's the position that your client is. And that is the position that we're arguing for, yes. Okay. And that still doesn't necessarily answer the question of whether the translation occurs, right? Correct. Because you say, I thought you were saying as appropriate means as needed. Or if needed. It's a very subtle point. So in the system you have, in a DAS system you have, as disclosed in the specification and in the claims, you have the DAU, which is the digital access unit, which communicates to the network provider, for example, AT&T and others. And the DAU connects to the RRUs, the remote radio units, that communicate with the cell phone, the users on the other end. And translating can happen, but it's not necessary to happen at either the DAU or the RRU, right? So if you get a signal to the RRU that is an RF and it needs to be transported to the DAU, one of the inherent parts of the system that's not in dispute is that communication is digital. It's over an optical cable. It's shown in the drawings and in the specification. And that is digital, and that is done in baseband. So when the RRU receives an RF signal and it transports it to the DAU, translation must occur. Similarly, if the DAU sends a baseband signal to the RRU and the RRU needs to make that an RF signal to send to the user, that would be translated as well. Similarly, the DAU and its communications with the network operator, that's agnostic. And if you look at the patent, I believe it's column... I don't want to get it wrong. Column 5, lines 1 and 2. Actually, that's the one I was looking for. Yes, column 5, lines 8 to 15. It describes that this invention can communicate with all sorts of signals coming into the DAU. It can go with microwave, it can go with an Ethernet cable, which would be digital, and it can also bring in RF. So depending on what the DAU is connected to, then there may be translating at the DAU as well. You're looking at page A56, column 8. I mean column 5, lines 8 through... 15. I'll be honest with you. Maybe I'm missing something technology-wise, but it doesn't expressly say what you've just said. So why do you think that the language here says what you just said? Instead it says it can be deployed with distributed base systems, distributed antenna systems, distributed repeaters. Unless I'm looking at the wrong place, I'm not seeing a clear understanding of why this supports what you just said. Then it gets to other wireless communication systems such as microwave and satellite communications. The present invention is also field-upgradable through a link such as an Ethernet connection. A microwave is a different signal than an RF. A satellite will send different signals, and an Ethernet would be a digital signal. So all of those require translation to baseband? If they're going to be communicating out to the radio units, absolutely. So all communications between radio unit and DAU must be baseband. But your claim is directed to a method for routing and switching RF signals. The preamble does say a method of routing and switching RF signals, and the method actually does route and transmit RF signals at the radio units every single time. At the DAU, depending on what it's connected to, sometimes. I'm a little confused as to your answer, agreeing with her claim construction, because it didn't sound like the claim construction you were proposing. I thought the claim construction you were proposing would allow your claim to read on a system that did no translation whatsoever. No, Your Honor. That is, I apologize if that didn't come through clearly. What I've tried to make clear is that the translation step is optional at each spot, but it's conditional at each spot. I'm sorry, not optional. It's conditional at the DAU, and it's conditional at the RRU. But it's not optional. It has to happen. There has to be translation. And there is translation at the RRU in both directions every time. At the DAU, it's translated as appropriate. If an RF signal comes in, it's translated to transmit. If a digital signal comes in, it doesn't need to be translated, because it's not appropriate to translate that signal. That signal is already in the form that it needs to be. I'm confused, too, because I thought the issue on translation was whether or not it was a requisite step, or whether it was a mandatory step or not. No, I think, with all due respect, COMSCO's briefing has made that an issue, but that's not an issue that I raised. We've said repeatedly that it's a condition, not an optional step. What exactly is the language of your proposed construction? Where will I find it? So Dolly's proposal is plain and ordinary meaning, subject to the district court's existing construction of downlink signals. Where are you reading it from? I'm sorry. I'm reading from docket 26, Dolly's brief, at page 58. Do you have an appendix number? Is that your blue book, 58? Correct, my blue book, 58. Well, that's not a construction that... I mean, plain and ordinary meaning is not very helpful here. So the thing you're really arguing about today is the last sentence of your proposed construction, right? That translating as appropriate is a conditional limitation? Correct. Which means that it only happens sometimes. It means that it happens when it's necessary. The step happens every time. Whether or not the translation has to occur is conditional upon if it's appropriate or not. When does it make it as appropriate? When it comes in as an RF signal? If it comes in as an RF signal and it needs to go between... You're always in baseband between the RUs and the DAUs. Always. That's inherent in the system. So if it comes in as an RF signal and it's going to something that... I can't keep track of all these different units. It's very complicated. But if it's going through that phase that you say always has to be a baseband, it has to be translated. Correct. And similarly, if it's coming from one of those things that only sends a baseband signal and it's going out for something that needs RF, it's going to translate to RF. Correct. So it's always going to translate from RF to baseband when it's the type of receiver that needs one or the other. Yes, it will always translate to make sure that the appropriate signal form is at the appropriate spot for that communication. I mean, it would have been more helpful if you would have proposed an actual construction rather than just, say, point it where they're meeting. Or even conditional limitation, because obviously there's some confusion about what that means. Yes, Your Honor. Did you explain that in any more depth than anything in what you presented to the district court? In our presentation to the district court, we walked through when it happens. It's in our... I mean, I don't understand why this... The district court's construction sounds wrong to me, but I don't understand how it's necessarily inconsistent with what you're proposing and how it would lead to... Did you stipulate a non-infringement under this? Under the three together. We stipulated to a lack of evidence. But you said this is the most important one. This, along with the third one. And I'm running out of time. Well, I'm just... Why would the district court's construction of this claim render their system non-infringing and yours not? So under... The crux of the issue is that their system receives baseband signals at the DAU. Those baseband signals are then sent to the RRUs, translated and sent off. As the district court cascaded these constructions, the district court is requiring that packetized signals, which the district court says were produced, which I would argue they were introduced but not produced in the translating step, those are routed and switched in both directions. And what is true about ComScope's system is that the downlink signals are routed and switched, but the uplink signals are only routed. They are not switched. And so through the cascading effect of the court's constructions, the court has locked in a limitation that didn't exist in the original reading of the claims. So the routing and the switching, that is the third limitation. Correct. And that limitation needs to be read in conjunction with the whole of the claim limitation because it says according to the reconfiguring. And the reconfiguring, as described in the specification, and the purpose of this invention, is that when there are limited resources available at each of the remotes, then the system can reconfigure where those resources are available. For instance, if people come into a cafeteria all at once,  then you need more resources in the cafeteria relative to other spots in the system. Those resources are then reconfigured, and then you route and switch according to the reconfiguring. And so that's always in the downlink direction. One of the problems I'm having with your argument on the third limitation is just the plain language of the claim, where it says routing and switching depacketized signals. And then, you know, I understand what you're saying, that maybe that switching and routing doesn't occur with respect to some of the signals, but your claim doesn't seem to allow for that. The claim specifically says the packetized signals are routed and switched according to the reconfiguration. And the reconfiguration is always done at the remote radio units, and those communications are always in the downlink direction. Imagine a system where there is a single DAU, which is what the claim allows for. A single DAU has one to many. And so when you're going from one to many, you need to route and switch. Routing is telling it where to go. Switching is choosing the path, how it gets there. But when you have many to one, it's inherent in that system that there's only routing. You say go there, but there's no alternative path to get there. And the specification actually calls that out in the claim. And so reading according to the reconfiguring in light of the specification and what the specification specifically says about how communications move in the system, I think it's clear that the packetized signals that are routed and switched are according to the reconfiguration, which is always in the downlink direction. Okay. We're out of time. The story will be published on the other side. So it feels like we need some help here. So hopefully we can move on to the questions that were asked. I am eager to help. And may it please the Court, my name is William Bullard, representing Appelli-Tomskill. The Court should affirm, and the Court can affirm based on any of the three claim constructions entered by the District Court. And I want to start there by clarifying that point and point out that in our brief on page 5, we highlighted the three separate stipulations that were entered by Dolly. Dolly separately stipulated that it, quote, cannot cause infringement under this construction for each individual construction. And I'm going to take up my presentation starting with the routing and switching where he left off, and I want to highlight that also on page 3 of our brief, there is a separate factual point in the record which was undisputed. Delaware has a procedure where the undisputed facts are identified, and it is an undisputed fact that the accused product, quote, does not perform the routing and switching step for any packetized uplink signal. So that is absolutely... Did you say for any packetized uplink or downlink, or just uplink? Uplink signals, Your Honor. So that is absolutely an independent and sufficient reason to affirm. And so, if I may, Your Honors, I'd like to start with that routing and switching step and follow up, Judge Schill, on your point about the plain language. So the Court was resolving the dispute of what does the packetized signals refer to, and the Court didn't do something unusual. It simply applied the ordinary rule that when you have a phrase like the packetized, that begs for antecedent basis, and the only possible antecedent basis is the packetizing step that does expressly have an and. It says packetizing downlink and uplink signals. It doesn't just say downlink signals. But what about... Your friend points to the language at the end of that limitation which says according to a result of the reconfiguring, which he says is downlink only. I don't agree with that, and I would identify, Your Honor, that they didn't even make that argument in the briefing. Their argument in the briefing about the other claim language focused on the word among. They never pointed to the according to a result of a reconfiguring. And if we look at any of the other surrounding claim language, whether it's via the DAU, among the remote radio units, or according to the result of a reconfiguring, if you just take that plain language, via, among, and according, none of those state a one-direction only requirement. They don't exclude a direction. That's not the plain language of the claim. Do you agree that there might be an embodiment of the specification where it's only the downlink signals that are routed and switched? No, I don't agree with that. The specification teaches we have... This is a mirror system. It's a bidirectional system, and the whole point is, just like I can talk to you, you can talk back to me, and there's going to be a reciprocal operation that goes back and forth. So we have figure 1, that's the downlink. Figure 2 is the uplink. They're shown having the identical setup. It's simply reversed. And the specification teaches that you can understand the uplink similar to the downlink. So it's not teaching the uplink is different. It's saying it's similar. And the specification expressly uses the identical word routed when describing the downlink signals and the uplink signals. Does that answer Your Honor's question? Well, I guess so. Thank you. And so I do think the plain language is clear, and I would point out that we're here to identify, did the district court make an error? And my colleague says, well, the district court made an error. It did the antecedent basis analysis wrong. But they never explained what the correct antecedent basis analysis would have been. Again, their construction is just plain and ordinary meaning. There's no other option for the antecedent basis analysis. Where's the packetized signals coming from? Routing and switching the packetized signals, you emphasize the. So what is that coming out of the packetizing step, right? Correct. Okay. Correct. And if we stay with the plain language of the claim in this idea, well, what about the other plain language? Although I think the packetized is very clear. I do think that my colleague on the other side has a misunderstanding. This step is doing multiple things. It's saying what is routed and switched. That's the packetized signals. And then it's also explaining the how. How are the signals routed and switched? And that's this longer phrase about among the one or more remote units, via the digital access unit, or as a result of the reconfiguring. But that how is not redefining or narrowing what is routed and switched. If they meant to do that, you would expect a claim that said something like routing and switching the packetized signals, wherein the packetized signals are only downlink signals. What about the via the at least one digital access unit? Yes. How are the uplink signals when they're packetized via the at least one? How is the routing and switching via the at least one digital access unit, how does that happen with respect to uplink signals? Absolutely. Because the uplink signals flow through that at least one digital access unit. The courts construction, which neither party is disputing for via, was through. So you can move through something in the forward direction. You can move through something in the reverse direction. It just means through. It doesn't mean that the digital access unit has some work that it does in the switching and routing. Correct. The court's construction was through, and I believe the court even used that phrase flow through. And we point out in our briefing with annotations how exactly you would route and switch through the DAU those uplink signals, and that's shown in our brief on page starting on page 57. We do it in we start with showing the downlink, and then we show it's the mirror operation for the uplink, so from pages 57 through pages 59. And I would note that they didn't come back and say, Mr. Bullard, you annotated these figures wrong. There's something misleading here. This does correctly show how it flows through the DAU. I think the annotation on the top of 59 might be the clearest because there's so many colors going on here. And he did make a point that he was suggesting it would be impossible to route and switch uplink signals if you only had one DAU. That's not true. You see in the figure, which is the figure from the patent, figure two on the top of page 59, that you can have multiple uplink destinations that these signals need to go back to. They came from something when they were in the downlink, and now they need to go back to that something in the uplink. So you could have one base station, two base stations, three base stations, and you have to correctly route and switch them back to those destinations. Can I just ask you about a point of clarification exactly where you started? Where you started by pointing us to page 5 of your brief where they stipulated that there's no infringement of these instructions. What is the link between that and what you pointed us to on page 3? Where there you say you also pointed out that Dolly agreed that the accused product doesn't perform the routing and switching step. Is that the routing and switching step as construed by the court or just generally? Generally, Your Honor. What's on page 3 is a statement describing the factual operation of the accused product. So what had happened was— So how could there be any infringement? Why didn't the case begin and end there? That's our position. So these became undisputed in connection with summary judgment briefing, and that was our argument. We were saying, look, these facts are undisputed. The proper construction, we're just following the plain language of the claim. We don't infringe. And the court said, I'd like to do some supplemental claim construction. And then when the court agreed with us, then Dolly entered the three stipulations on page 5. So do you understand the position now before us that if routing and switching is construed as they think it should be construed as opposed to the way you think it should be construed, that they would agree that there's no infringement? No. If I'm understanding your question right, I do think my colleague is saying if the court reversed, if this court reversed and said, I guess their construction is plain and ordinary in meaning, so that's a problem. I don't understand what that would mean because we are the plain and ordinary. Well, now they're clarifying about this result of the reconfiguring always being downlinked. And I don't think the claim says it's always downlinked. But, Your Honor, if the court said, I guess if the court said we're entering a construction, the routing and switching step excludes routing and switching uplink signals. That's excluded. Then I would think there would need to be a remand on that. So you don't think that's what you're pointing to on remand is that they've lost the case anyway because they said they don't? Correct. I just want to be clear how far you agree with the stipulation. Yes. And so I do want to transition to the second issue. So I'm working backwards from routing and switching. Now I'd like to go to the packetizing step we've already touched on in the second issue, which was, again, on an antecedent basis, what does the baseband signals refer to here? And the court did the same approach where it said the ordinary rule is that the definite Article V is going to refer to something earlier in the claim, and we only have one candidate here, which is the translating step. And I only have one point to highlight here, which is there's just an immediate hole in my colleague's argument. Their position, if you look at their construction, is plain and ordinary meaning antecedent basis is present, quote, by implication. But the hole is by implication from what? I mean, what is it in the claim or even in the specification that implies this antecedent basis? So their construction is like a half thought. They just say by implication, but from what again? And if we look at the claim, it's conceded by them via their expert that the only candidate in the claim is the translating step. And if we look at the specification, it's also conceded via their expert that, quote, all the baseband signals were produced by the prior translating step, which is the court's construction. Is there any dispute at all between the parties about whether the steps in this claim were performed sequentially? I haven't seen any dispute about that. I mean, there are, you know, I think we have some case law that says when you have a method claim, there's some sort of minor presumption that it's either sequential or not sequential. Is there anything about that in the dispute between the parties? So I don't want to put words in my colleague's mouth, but I do think there are statements from their brief that would suggest they can't dispute that there is a logical sequence here in the method, and what I would point to, and we certainly point this out in the brief, on page 44 of our briefing, we note that they had two concessions. We say that Dolly concedes the packetizing step, quote, logically follows the translating step. So if it logically follows, I do think there has to be an order there. And they also told that there was another concession identified on that page that I'll just note. Before your time runs out, can we talk about translating? Yes. Because there's obviously at least a misunderstanding on my part. Viewing their position as being as appropriate meant that it wasn't mandatory. And now it seems like what they're telling us here is, no, that's not their position. I'm understanding it. So maybe you understood it better than I did. To be honest, Your Honor, I don't understand it better. I have been confused with this. This started because their expert opined that the step was, quote, optional. We include that, quote, in our brief. So that's where we started. And we pointed out that it's highly disfavored to construe a step to be optional. So then their lawyers shifted to, well, it's conditional. But the way they articulate their conditional position, they often refer to no translation being necessary. So on page 59 of my colleague's opening brief, they give this whole litany. There's this paragraph at the top of the page that they say is what the plaintiff with the plain meaning of the claim is. And I think that's a problem. I mean, they really have a problem articulating what does this claim mean. But in this paragraph, they have this line, they say, quote, but if the downlink signal is baseband, that's the accused product, not RF, then no translation is necessary or appropriate before the signal is packetized. So they're admitting that their position is going to be, before you packetize, no translation. And that doesn't make any sense. Remember, they conceded that the packetizing has to logically follow the translating, which is why you can't just point to a remote unit that does a translation that's untethered from packetizing, it's untethered from routing and switching, and just the remote unit just emits that signal. It's gone, and there's no further processing. What do you think of the interpretation that I proposed as appropriate, which is that there's some translation that's occurring, but it's either, as appropriate means either from RF to baseband or baseband from RF to RF. Because the claim is putting, it doesn't have a single translation step of translating from one to the other, period. It says translating between these two possibilities as appropriate. In other words, translating occurs, it's just what type of translating. But translation always has to occur. I certainly agree translation always has to occur, and I do think the district court agreed in part with Your Honor. The court included a footnote. I'm not saying I'm buying that interpretation. I'm just throwing it out there to see what you think of it. Yes. I do think the most sort of, you know, this court has often observed that the construction that sort of stays true to the claim language and naturally aligns with the specification is the correct construction. And I think the court's construction does that. You know, it stays true to the claim language because when you look at the phrase as appropriate, the only evidence the court heard was that the ordinary meaning of as relates to the amount. And if you look at the ordinary meaning of baseband, baseband relates to an amount of zero, zero frequency, and RF, it's undisputed as a range. So I think there's... There's nothing in the specification that talks about the amount of translation required that I can find. I don't see anything in there where that's an aspect of the invention or even hinted at. First, it has to decide how much translation is required. There's nothing like that. So it seems kind of bizarre to be reading that into the claim. Well, so two points, Your Honor. One, I do think there is a comment in the specification where it talks about you need to, when you have an... If we're looking at the uplink signals now, and remember the uplink and the downlink, it's the same. It's just reversed. You have to go back to the, quote, appropriate frequency band. And it's agreed that the frequency bands are arranged. So I think that is a little support. Now, I do take Your Honor's point, and I think the real reason is translation, you know, it sounds very technical when we're talking about it today. To a person with skill in the art, this is regular course of business. They know what translation is. They know how to do translation. And they know that the amount is going to vary. It's just math. It's like turning a radio dial between a high radio station down to a lower radio station. Why did the district court feel the need to interpret as appropriate? I understood the district court was interpreting the term as appropriate just because in response to the argument being made by Dolly that as appropriate means as necessary or conditional. I think that's the language they were relying on to say that it doesn't occur every time or that it's conditional. Yes. So is that why you think the district court had to say, ascribe a meaning to as appropriate to say whatever it means? It doesn't mean what Dolly is saying? It doesn't mean it's conditional? Yeah. So I think the district court was just trying to do a complete job, and I think it would have been sufficient. You know, the court could have been a little lazier and could have just stopped at rejecting their position that it was a conditional limitation. I think that would be sufficient, would have been sufficient, but I think the court wanted to do a complete job. And I do want to be clear, though, Judge, that on this question of why couldn't it be from one type to the other, the court did include a footnote. This is footnote 1 right off of her own construction where she says she's not excluding that other type of term. Do you have appendix 3? Yes, it's appendix 3. I'm sorry, Your Honor. That's all right. So in footnote 1, the court has explained she's not excluding translation from baseband signal to an RF signal, which I think is, Judge Stoll, what you are getting at. But what the court is recognizing is there's this narrowing language in the packetizing step that it has to be packetizing the baseband signal. So that's what tells us that we have to have some particular baseband signals, and there's this logical sequence here. That was really the heart of the dispute, which the court recognized, quote, the fundamental dispute is whether the baseband signal that gets packetized was previously translated. Does that answer Your Honor's question? Sure. And I don't think we need to pile on. I mean, there's already three independent reasons to affirm. But I would note that if we keep going down this rabbit hole of what does as appropriate mean, we pointed out let's just accept their argument. Let's just say it's conditional. That runs into this court's HITERA case, which we cited on page 59 of our brief. And my colleague didn't specifically respond to this HITERA case. And so the HITERA case was interpreting this earlier Lincoln case. And what I want to just identify is that this HITERA case did involve a method claim where there was an expressly conditional limitation. And I want it to be precise, so I printed out what it said. The claim there said, quote, if the time slot is the current desired time slot, selecting a synchronization pattern selected from a first set, otherwise selecting a synchronization pattern selected from a second set. So there were two options for this selecting step. And this court held that to meet this claim, the system still had to be at least configured to perform this selecting step in response to each of those conditions. So you had to be able to do the if. You had to be able to do the otherwise, even though if in any one particular performance you didn't do both. And if we apply that rule here, so we give them what they want, which I don't think they're entitled to, but that goes back to the undisputed facts that I identified on page 3 at the start. It's undisputed that the whole system, quote, cannot translate a downlink RF signal to baseband. So even in their conditional construction, that's one of the conditions they say. They say if you get a downlink signal that's RF, you translate it to baseband. But it's undisputed we can't do that. So it wouldn't meet this HITERA case law. And my final point is that this HITERA case law, it does, I think, provide an illuminating contrast that shows we're going way out of bounds here with this conditional idea. The limitation was conditional there because the plain language, number one, expressly used the conditional language if. Number two, expressly defined a condition, quote, if the time slot is the current desired time slot. And number three, expressly used the conditional format where the method actually split in two different steps, do one thing or the other thing. We don't have any of those facts here. Okay, we're way beyond our time. Thank you, Your Honor. Thank you. Okay, we're going to add some time on to you. So we'll give you six minutes of rebuttal if you need it. Thank you, Your Honor. Yes, there's a lot to unpack there. And I fully appreciate your confusion because as I listen to it, I can understand where a lot of that confusion comes in. Starting with the translating facts, I want to point out two things. One, Your Honor mentioned that I had mentioned that the specification talks about routing and switching when talking about the downlink and only routing when talking about the uplink. Routing and switching in the downlink can be found at column 8, lines 30 through 33. And when talking about the uplink, it just calls out routing. That can be found at column 9, 27 to 30. And the overall theme I just heard is that each one of these cascades from the previous. So starting at the bottom, saying the packetized signals must be routed and switched in both directions. That's really what this comes down to because what the plaintiffs are trying to create is an argument that requires translating in both directions, packetizing in both directions, and routing and switching in both directions. But the claim as written and the specification as presented made clear that looking at each limitation, there are two pieces of information that inform a posita of what needs to occur at each limitation. There are two pieces of hardware. There's a DAU and there are RUs. There are two directions. There's uplink and there's downlink. And there's two types of signals. There are baseband and there are RF signals. And what the cascading effect, the Comscope has brought into this, they're trying to create a system in which you must translate at both the DAU and the RUs. You must packetize at both the DAUs and the RUs. And you must route and switch at both the DAUs and the RUs. But a plain reading of the claim and the teaching of the specification don't actually require those things. Those are only created when you stack these things on top of each other. And it starts with the translating step creating the baseband signals that are going to be packetized. But if read much more according to the plain language of the claim, where you get the uplink and downlink signals, by the way, there's no antecedent basis called out for that, and that's never been raised. Why? Because it's inherent that there are uplink and downlink signals in a system. But in the translating step where you have the uplink and downlink signals that are translated as appropriate between RF and baseband, that is where baseband signals are introduced in this claim. The antecedent basis for the packetizing of the uplink and downlink baseband signals has antecedent basis in the step just before it without the requiring that the translation happens at both of these spots. So translating needs to occur. I don't think it's conditional in the sense that it doesn't need to occur, but it doesn't need to occur in both places, in both directions, at all times. The claims just don't require that. There was also... I'm sure there are questions on that. Or should I move on? Okay. So the via the at least one, and saying they can just pass on through, but it has to be routed and switched. All the things that my colleague pointed to as being routed and switched in the uplink direction aren't part of the system. Can I ask you, did you dispute? He had said that the district court held, and I do recall this happening, the district court held that via the at least one digital access unit means through. And there's no dispute of that, right? There is no dispute that through is... And what was your proposed construction on this? Of via? No, of the result of reconfiguring. Did that come up? What was your proposed construction on this routing and switching to the district court? That given the plain language of that claim where the routing and switching occurs according to the result of the reconfiguration means it must be in the downlink direction. Because the reconfiguring is literally the crux of this patent, which is you reconfigure remotes, and only remotes, you never once, and it's never discussed that you reconfigure DAUs. So you reconfigure the remotes, and then you route and switch resources to the remotes as needed. Um... The other thing, as appropriate, has come up many, many times. The word appropriate is found in the specification precisely eight times. And seven of those eight times, it stands alone, and it is used in conjunction with appropriate RF signal. And that is... When read in context, that is eliciting a choice among options. RF signals... You know, the RF signals that are used in these are distinct things. They don't interoperate, they don't communicate. There is a choice, and you make the choice, and it's... It informs a decision amongst choices. The single time as appropriate is used in as appropriate, as in column five, lines one and two. It again is saying you route... An option is that you can route as appropriate amongst WiMAX, Wi-Fi, VOIP. Again, it is using as appropriate to say you have a decision amongst choices. It is not talking about an amount or a necessary amount. There, when it says as appropriate, it's saying one of those three, though, right? Yeah, it's an exemplar. It's just an exemplar. It's going to do one of those things. It's not going to... It says reroute the users to VOIP, Wi-Fi, or WiMAX as appropriate. There, as appropriate is modifying whether it's going to be VOIP, Wi-Fi, or WiMAX, right? Sure. And here it is distinguishing between baseband and RF. The translation, whether you're going to go RF to baseband or baseband to RF. Correct, but there's nothing in that claim that says that it has to be at the DAU or it has to be at the RRU. So as long as it happens, and we know it always happens at the RRUs, that claim should be met. Thank you. Thank you.